IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARLENE BRUBAKER,

          Plaintiff,

      vs.                       Case No. 03-1075-JTM

KELLY SCHNEIDER,

          Defendant.

MEMORANDUM AND ORDER

This action alleging the violation of the civil rights of plaintiff Marlene Brubaker is before the court on the motion of the defendant Kelly Schneider for summary judgment. Schneider argues that the action is barred by the preclusive effect of the decision of the court in a separate criminal action filed against plaintiff's husband.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come

forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In July of 2002, Brubaker and her husband, Robert Stokes, left their home in Philadelphia to visit her brother in Pueblo, Colorado. They left Philadelphia in a rental car.

On July 20, 2002, Brubaker and Stokes were stopped by defendant Kelly Schneider on I-70 for failing to maintain a single line of traffic. According to Brubaker, Schneider followed her car for a while, pulled up alongside and observed the occupants, and then pulled back and put on his lights. Brubaker's statement of facts makes only a limited denial of the charges of illegal driving: she affirmatively states that she "did not go on the shoulder of the road," but further states only that she "did not recall" crossing the white line on the shoulder, and "did not recall drifting either left or right." (Resp. at 3).

According to Brubaker, Schneider told her that he was holding her after the initial stop because of the presence of a car theft deterrent club in the back of the car. Schneider felt it was unusual for such a device to be in a rental car. He asked for consent to search the vehicle, which Brubaker declined. When Schneider asked about using a canine to sniff the car for contraband, Brubaker did not say anything.

Schneider conducted a canine search around the car; the dog alerted to the trunk. Brubaker told Schneider that there was a shotgun in the trunk. When Schneider looked in the trunk, he found

a rifle and an empty pistol case.  Schneider asked if there were any pistols in the vehicle, and Brubaker said there were, in her purse.  Schneider found two handguns in Brubaker's purse, and, following a pat-down, another a handgun in Stokes' pocket.

Schneider then placed Stokes under arrest for carrying a concealed weapon.  In addition, Stokes was in possession of the weapon even though he had been convicted of a felony in 1968.

Stokes and Brubaker were transported to the Russell County, Kansas Sheriff's Office; a law enforcement officer drove the rental car there.  Stokes was charged in state court as a felon in possession of a firearm.  The charge was later dismissed and the charge re-filed in the United States District Court for the District of Kansas, Case No. 03-40064-01.  Brubaker was held four to five hours while officers searched her car.  No narcotics were found.

Brubaker's attorney in the present case appeared on behalf of Stokes in the federal criminal action and filed a motion to suppress evidence.  On November 21, 2003, a hearing was held before the Honorable Richard D. Rogers on the  motion to suppress. Brubaker, who received a Juris Doctorate degree from the Northwestern School of Law at Lewis and Clark College in 1991, was the only witness to testify on behalf of Stokes.  Brubaker  testified to all material facts regarding Defendant's stop, search and seizure at the suppression hearing.

Judge Rogers denied Stokes' motion to suppress, finding that Schneider had made a lawful stop, search and seizure.

**Conclusions of Law**

Defendant Schneider seeks dismissal of Brubaker's claims on the basis of issue preclusion. He argues that the issues raised herein were all previously decided in Judge Rogers' decision denying her husband's motion to suppress in the criminal action.  Under the doctrine of collateral estoppel, a decision of law or fact precludes re-litigation of the issue in a subsequent suit on a different cause of action involving a party of the prior litigation. *Montana v. United States*, 440 U.S. 147 (1979);

*Brown v. DeLayo*, 498 F.2d 1173 (10th Cir. 1974). The doctrine has been held to specifically apply to federal civil rights actions. *See Allen v. McCurry*, 449 U.S. 90 (1980).

Brubaker argues there is no issue of preclusion because, first, the issues in this case weren't actually presented because Stokes had no standing to challenge the use of the drug dog and the only issue was the pat down which revealed the pistol in his pocket. Second, there was no full or fair opportunity to litigate those issues, and third, there was no privity between the parties. She stresses that only Schneider was a party in the criminal action and he ultimately pled guilty rather than appeal.

The court finds that the absence of an appeal in the criminal proceeding is of little import, and a review of the earlier criminal case reveals there was a full and fair opportunity to litigate the issues. The existence of an actual appeal, as opposed to the right to an appeal, is not a prerequisite for issue preclusion. *See Searing v. Hayes*, 684 F.2d 694 (10th Cir. 1982). The question of whether the interests of Stokes and Brubaker are so aligned, and her participation in the earlier proceedings was sufficient, that she may be considered in privity for purposes of issue preclusion is more substantial.

Defendant Schneider stresses authority which suggests that privity, and hence preclusion, would be appropriate in these circumstances, specifically the decision in *Henderson v. Stone*, No. 87-C-2775, 1989 WL 81818 (N.D. Ill. July 11, 1989), *aff'd*, No. 89-2575, 1991 WL 54855 (7th Cir. April 11, 1991). In *Henderson*, the court held that issue preclusion applied because the plaintiff's wife's participation in prior criminal proceedings was direct and substantial. The court observed:

> While we recognize that Mrs. Henderson's participation was as a witness, and that therefore she did not control the proceedings as a party would, the extensive treatment given to her testimony both at trial and at the appellate level justifies foreclosing relitigation. "The question of whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court." *Aerojet-General Corp. v. Askew*, 511 F.2d [710,] 719 [(5th Cir.), *app. dismissed*, 423 US. 809 (1975)]. Although she was not a defendant in that criminal trial, she testified on behalf of her husband. The issues she addressed were the very issues presented here. She had every incentive to present her strongest arguments and her testimony was considered and rejected by the trial judge and the appellate court. We conclude that her interests were so aligned with her husband's as to make him a virtual representative in the prior proceedings for collateral estoppel purposes.

4

At least one other court has followed this conclusion in *Henderson*. In *Anderson v. City of Chicago*, No. 99-0004, 2004 WL 626528, (N.D. Ill. March 29, 2004), the court held that the plaintiff's daughter was in privity with her father, and thus estopped from litigating the validity of a search of their house for illegal weapons, following the prior denial of the father's motion to suppress in the criminal action. The court stressed that the daughter, even though not charged criminally in connection with the search, had testified at the suppression hearing, and had a similar privacy interest in the house.

> At the state court evidentiary hearing on the Fourth Amendment issue, the state court heard testimony that Ms. Anderson was present and very frightened when the Defendant Officers came to the house. Although the state court judge did not find this testimony credible (and for good reason, as Plaintiffs have abandoned their contention that Ms. Anderson was present during the search and seizure), this testimony nevertheless forced consideration of Ms. Anderson's privacy interest during the previous proceeding. Moreover, Mr. Anderson's incentive to litigate the issue vigorously in the prior proceeding was quite strong owing to the pending criminal charges. Since the legal inquiry would be identical for both Plaintiffs and the previous proceeding did include evidence of harm to Ms. Anderson's interests, this Court can detect no unfairness to Ms. Anderson from applying collateral estoppel to her claim as well.

2004 WL 626528, at *7.

The Sixth Circuit has reached a similar conclusion. In *Hawkins v. Czarnecki*, No. 96-2437, 1998 WL 57333, at *3 (6th Cir. Feb. 2, 1998), the court wrote:

> The plaintiffs also challenge the district court's conclusion that the search and seizure issues are barred by the doctrine of collateral estoppel, or issue preclusion. Under this doctrine, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel can be used to bind a non-party to the prior suit only if the non-party was in privity with a party to the prior action. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1069 (6th Cir.), *cert. denied,* 116 S.Ct. 296 (1995). All of the plaintiffs to the present action were parties to the state forfeiture action where the seizure of their property was litigated. Thus, the district court properly found that the seizure and forfeiture issue is barred by collateral estoppel. The search of the Hawkins home was litigated in Hawkins's federal criminal action to which he alone of the plaintiffs in this action was a party. *See Haw[ki]ns*, 969 F.2d [169,] 176-77 [6th Cir. 1992)]. However, because Hawkins was represented by counsel, his interests were closely related to those of his family, and his very freedom was at stake, the district court did not err in finding that his litigation of the search issue was sufficient to estop his wife and children from relitigating it in this action. This conclusion was also reached by

the Michigan Court of Appeals when the plaintiffs raised it on appeal of the state forfeiture order.

On the other hand, the Seventh Circuit has urged caution in subjecting non-parties to issue preclusion based on the idea of "virtual representation." *See Tice v. American Airlines*, 162 F.3d 966, 971 (7th Cir. 1998). As the *Tice* court stressed, adequate representation by itself is insufficient to create preclusion; there must be some additional factors such as "control or participation in the earlier litigation, acquiescence, deliberate maneuvering to avoid the effects of the first case, or the close relationship between the parties to the various cases" *Tice v. American Airlines*, 162 F.3d at 971, *citing* 18 Wright, *Federal Practice and Procedure* § 4457 at 420, 502 (1998 Supp.)

The cited treatise also cautions that "[d]ecisions reached in many such settings make it clear that the [nonparty litigants] are not bound by the first judgment simply because they are parent or child, grandparent or grandchild, husband or wife, or brother or sister of the original plaintiff. Id. at § 4459, at 608-10 (footnotes omitted). And one of the authorities cited with respect to "husband and wife" preclusion was *Tavery v. United States*, 897 F.2d 1032 (10th Cir. 1990), where the court reversed the trial court's determination that the plaintiff's wife was entitled to collateral estoppel based upon a favorable separate ruling obtained by her husband. The Tenth Circuit stressed that although the couple had filed joint tax returns and the filers of joint returns are subject to joint and several individual criminal liability under federal tax law, it has been long-established that a "'wife who files a joint return with her husband is not a party privy to her husband in [income tax] litigation....'" Id. at 1034 (*quoting Rodney v. Commissioner of IRS*, 53 T.C. 287, 1969 WL 1680 (1969).

The general requirement of privity between parties was recently discussed by the Tenth Circuit in *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998), where the court concluded that officers sued in their individual capacity were not subject to issue preclusion based upon prior criminal proceedings The court wrote:

> In order for issue preclusion to apply to this case, Defendants, Officers Ratzlaff and Serrate, who were the arresting officers in Plaintiff's criminal proceeding, must have been parties to that criminal proceeding or in privity with the parties in that action.

*See Hildebrand v. Gray*, 866 P.2d 447, 450-51 (Okla.App.1993). Clearly, the officers were not parties to Plaintiff's criminal proceeding. Plaintiff's opponent was the State of Oklahoma. Officers Ratzlaff and Seratte had no control over the prosecution of the criminal case and their role "at the [preliminary] hearing was simply that of a witness for the prosecution." *Duncan v. Clements*, 744 F.2d 48, 52 (8th Cir.1984). The officers "could not call witnesses, ... direct the examination of the State's witnesses, ... [or] choose the counsel who represented the State at the suppression hearing. Nor could the officers appeal the ruling once it was made." *Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991); *accord Duncan*, 744 F.2d at 52-53; *Jackson v. Ramundo*, No. 95 Civ. 5832, 1997 WL 678167, at *4 (S.D.N.Y. Oct. 30,1997) (stating that collateral estoppel did not apply to section 1983 action because officer was not party or privy to criminal case); *Trujillo v. Simer*, 934 F.Supp. 1217, 1224 (D.Colo.1996) (holding that collateral estoppel was inapplicable because customs officers were not parties to the criminal case and were not in privity with the party); *Griffin v. Strong*, 739 F.Supp. 1496, 1502-03 (D.Utah 1990) (determining that officer was not a party to or in privity with the state in plaintiff's criminal case); *Brown v. City of New York*, 60 N.Y.2d 897, 470 N.Y.S.2d 573, 458 N.E.2d 1250, 1251 (1983) (holding that determination in criminal case on unlawfulness of plaintiff's arrest does not bar city from contesting the unlawfulness of arrest in subsequent civil action).

The court finds that the participation of plaintiff in the criminal action against her husband was of such a nature that she may be appropriately found to be in privity with him for res judicata purposes. As noted above, the mere fact of the marital relationship itself is insufficient for privity, but this case presents much more. Not only are Brubaker and Stokes husband and wife, both were passengers in the same vehicle when it was stopped by defendant. Schneider took the same actions as to both Brubaker and Stokes. Brubaker and Stokes have the same counsel, who filed the present civil action just four months before criminal charges were filed against Stokes. Both the present civil action by Brubaker and the motion to suppress in the criminal action raise essentially identical factual claims as well as legal arguments. Brubaker has a law degree, and was the only witness testifying on Stokes' behalf at the suppression hearing.

The plaintiff has not cited, nor has the court found, authority which suggests privity is not present where there is the sort of direct and substantial participation in the prior court action as presented here. Rather, the extensive participation in the earlier case would appear to bring the action within ambit of cases such as *Henderson v. Stone* and *Anderson v. City of Chicago*.

Finally, the court finds that the argument by Brubaker that this case presents issues not addressed by Judge Rogers is without merit. The facts alleged in the Motion to Suppress filed in the

criminal action (Dkt. No. 20, at 2-5 ¶¶ 1-22) and those presented here are virtually identical. Contrary to the suggestion by plaintiff that the scope of the earlier suppression motion was limited to issues such as the validity of the pat-down of Stokes and did not address Brubaker's detention, a review of the pleadings in the criminal case demonstrates that this is incorrect. The motion to suppress filed on behalf of Stokes explicitly alleged illegal conduct by Schneider both in stopping the car driven by Brubaker, and in "continuing to detain Brubaker and defendant after the initial stop had been accomplished." (Dkt. No. 20, at 5.) Further, Judge Rogers' decision directly and necessarily resolves the issues raised here. He found Officer Schneider was a credible witness, and held that he had an adequate basis for stopping the vehicle. (Dkt. No. 28, at 8). He explicitly rejected the contention that "the continued detention of defendant and Brubaker while the dog sniff transpired violated the Constitution." (Id. at 9). He noted that "[i]t is undisputed that the driver in this case did voluntarily consent to additional questioning." (Id. at 9). He explicitly considered the issue of the additional consent to use the drug dog, and, found "Officer Schneider to be the more credible witness on this point," concluded that Brubaker "did not appear intimidated, bullied or silent" on the subject, and held that Brubaker had "consented to continued detention while a dog sniff was performed." (Id. at 10-11). As a result of the dog alert, Officer Schneider "also had probable cause to believe that the car contained narcotics, although this was later determined to be incorrect." (Id. at 12).

IT IS ACCORDINGLY ORDERED this 9th day of March, 2006, that the defendant's Motion for Summary Judgment (Dkt. No. 35) is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE